1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT FUENTES,

11             Petitioner,              No. 2:10-cv-2873 MCE JFM (HC)

12        vs.

13   GREG LEWIS,

14             Respondent.           FINDINGS AND RECOMMENDATIONS

15   _____/

16             Petitioner, a state prisoner, proceeds pro se with a petition for writ of habeas

17   corpus filed pursuant to 28 U.S.C. § 2254.  At issue are his 2007 convictions in the Sacramento

18   County Superior Court, case number 02F10894, arising out of an assault on another inmate.

19                       BACKGROUND

20             The California Court of Appeal, Third Appellate District, summarized the facts

21   underlying the convictions at issue in this case.  Petitioner is the defendant referred to herein:

22             On July 28, 2002, Officer Chris Green, on duty as the yard gunner
              for the administrative segregation unit at CSP-Sacramento, saw
23             inmate Patrick Contreras approach defendant in the yard.  Officer
              Green then saw defendant clench his fist and twice jab at
24             Contrera's chest.

25             After the other inmates were ordered out of the yard, Contreras
              was found bleeding in the chest from stab wounds.   Defendant had
26             blood on his shirt and hands, and a knife was found in the yard.

1

1
2

> Defendant's former cellmate, Raymond Vara, serving a life
> sentence for murder, testified that he, not defendant, stabbed
> Contreras.

3
4

> The parties stipulated that defendant was serving a life sentence at
> the time of the offense.

5   *People v. Fuentes*, No. C057878, (Cal. Ct. App. 3rd Dist. May 29, 2009); Lodged Document

6   ("LD") 3 at 2-3.

7            A jury convicted petitioner of attempted premeditated murder with great bodily

8   injury, assault by an inmate with great bodily injury, and possession of a weapon by an inmate.

9   In a bifurcated proceeding, the trial court found for sentence enhancement purposes that

10  petitioner had previously been convicted of a prior serious felony.  At the sanity phase of trial,

11  the jury found petitioner to be sane.  Clerk's Transcript ("CT") at 312.  The court imposed a life

12  sentence with a minimum 18 year term plus an additional consecutive five year term.  Reporter's

13  Transcript ("RT") at 1172-73.

14           In an unpublished opinion on direct review, the California Court of Appeal, Third

15  Appellate District, affirmed the convictions and sentence.  LD 3.  The California Supreme Court

16  denied a petition for review.  LD 4.  Petitioner sought habeas corpus relief in state court where

17  relief was denied at all levels.  LD 6, 11-14.  Following a stay and abeyance for exhaustion

18  purposes, which was lifted on November 16, 2011, the parties agree that petitioner has exhausted

19  state court remedies on the grounds presented.

20                                           ANALYSIS

21  I.  Standards for a Writ of Habeas Corpus

22           Federal habeas corpus relief is not available for any claim decided on the merits

23  in state court proceedings unless the state court's adjudication of the claim:

24       > (1) resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law, as
25       > determined by the Supreme Court of the United States; or

26  /////

1
2

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3  28 U.S.C. § 2254(d).

4          Under section 2254(d)(1), a state court decision is "contrary to" clearly

5  established United States Supreme Court precedents if it applies a rule that contradicts the

6  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

7  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

8  result.  *Early v. Packer*, 537 U.S. 3, 7 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406

9  (2000)).

10          Under the  "unreasonable application" clause of section 2254(d)(1), a federal

11  habeas court may grant the writ if the state court identifies the correct governing legal principle

12  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

13  prisoner's case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ

14  simply because that court concludes in its independent judgment that the relevant state-court

15  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

16  application must also be unreasonable."  *Id*. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75

17  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

18  question, is left with a 'firm conviction' that the state court was 'erroneous.'")

19          The court looks to the last reasoned state court decision as the basis for the state

20  court judgment.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Under AEDPA, a state

21  court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

22  by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Ybarra v. McDaniel*, 656 F.3d 984,

23  989 (9th Cir. 2011).  Where the state court reaches a decision on the merits but provides no

24  reasoning to support its conclusion, a federal habeas court independently reviews the record to

25  determine whether habeas corpus relief is available under section 2254(d).  *Delgado v. Lewis*,

26  223 F.3d 976, 982 (9th Cir. 2000).

II. Analysis of Petitioner's Claims

      A.     Procedural Bar

      Respondent contends petitioner's grounds one through twelve are procedurally barred.  The last reasoned state court decision applicable to petitioner's grounds one through twelve is that of the Sacramento County Superior Court on state habeas corpus.  LD 13 at 1-9.  Presented with these grounds, the state court held they were procedurally defaulted for petitioner's failure to comply with state procedural rules requiring a habeas corpus petitioner to "state with particularity the facts upon which the petitioner is relying to justify relief" and to support the petition with "reasonably available documentary evidence or affidavits," and further, that some were additionally barred to any extent he could have, but did not, raise the issues in his direct appeal.  LD 13 at 1-9 (citing *In re Swain*, 34 Cal.2d 300 (1949), *In re Harris*, 5 Cal.4th 813, 827 fn. 5 (1993), and *In re Dixon*, 41 Cal.2d 756 (1953)).[1]

      As a general rule, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)); *see also Walker v. Martin*, 131 S.Ct. 1120, 1127 (2011).  An exception to the general bar exists if the petitioner demonstrates either (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-50.

      Here, it is recommended that this court reach the merits of each of petitioner's grounds for relief without regard to the asserted procedural bar since each ground clearly lacks merit. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (holding that a reviewing court need

---

[1] Despite finding petitioner's grounds one through twelve were procedurally barred, the state court went on to reach the merits of grounds one through seven and nine through twelve.

1    not invariably resolve the question of procedural default prior to ruling on the merits of a claim);

2    *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[A]ppeals courts are empowered to,

3    and in some cases should, reach the merits of habeas petitions if they are, on their face and

4    without regard to any facts that could be developed below, clearly not meritorious despite an

5    asserted procedural bar.").

6            B.      Grounds One and Seven: Shackling

7            In ground one, petitioner claims the trial court's use of full restraints on him

8    during court proceedings was an abuse of discretion and a violation of the right to be free from

9    cruel and unusual punishment, and that trial counsel rendered ineffective assistance in regard to

10   the issue.  In ground seven, petitioner claims the trial court also abused its discretion by

11   requiring witness Vara to testify while fully shackled and dressed in prison clothes, and that both

12   trial and appellate counsel rendered ineffective assistance in regard to the issue.

13           In the last reasoned state court decision applicable to grounds one and seven, the

14   Sacramento County Superior Court held:

15           [P]etitioner fails to show sufficient prejudice to warrant reversal of
             the judgment with regard to the shackling of either petitioner or
16           defense witness Vara.  Petitioner was being prosecuted for having
             committed the crimes while an inmate within a prison institution.
17           According to the Third District Court of Appeal opinion affirming
             the judgment, the evidence showed that the stabbing occurred in
18           the security housing unit.  The jury was already aware that both
             petitioner and Vara were inmates and therefore convicted felons,
19           and presumably that the[y] were housed in the security housing
             unit, and any further influence on the jury from seeing the
20           shackling of either would not have been sufficient to have made
             any reasonable difference in the verdict.  According to both
21           petitioner and the Third District opinion, Vara testified that Vara
             and not petitioner committed the stabbing, thus the jurors were
22           presented with a choice of whether Vara or petitioner had
             committed the stabbing.  As both petitioner and Vara were
23           shackled and both of their shackles may have been seen by the
             jurors, and the jurors knew that both were prison inmates who had
24           committed a felony and who were housed in the security
             housing unit, seeing the shackles on both would not likely have
25           had any appreciable effect on their choice of which of the two
             committed the stabbing based on the evidence.  Also, the jurors
26           received a special instruction at the guilt phase, to disregard the

                                         5

fact that petitioner was shackled during trial.  And, as noted in the preliminary hearing transcript and in the Third District opinion's view of the evidence presented at trial, Officer Green actually saw petitioner commit the stabbing, and the preliminary hearing transcript shows that a videotape presented showed petitioner committing the stabbing.  Assuming that the DVD shown at trial, discussed further, below, was this same footage, prejudice to the jurors from the shackling of either petitioner or Vara is not shown.

Nor does petitioner make a showing as to prejudice with regard to the sanity phase.  Any prejudice from jurors viewing the shackles likely would have been about whether petitioner was currently dangerous, and not have a bearing on whether petitioner had been insane at the time of the crime.  As the jurors already knew that both petitioner and Vara were prisoners housed in the security unit, viewing the shackles would not have had any appreciable effect on their determination of the sanity question.  And the jurors received a special instruction at the sanity phase, to disregard the fact that petitioner was shackled during trial.

For these reasons, these claims are denied.

LD 13 at 3-4.

"[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that restraints are justified by a state interest specific to a particular trial."  *Deck v. Missouri*, 544 U.S. 622, 629 (2005).  When reviewing a constitutional challenge to security measures taken in a state-court criminal trial, "[a]ll a federal court may do in such a situation is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." *Holbrook v. Flynn*, 475 U.S. 560, 572 (1986).

Prejudice is also an essential element of an ineffective assistance claim.  In order to state a cognizable claim for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), petitioner must show both that counsel performed deficiently, and that prejudice resulted from counsel's deficient performance.  *Id.* at 688.  To establish prejudice under *Strickland*, a petitioner must "demonstrate that there is a reasonable probability that, but

1   for counsel's claimed unprofessional errors, the result of the proceeding would have been

2   different. *Id*. at 694-95. A court "need not determine whether counsel's performance was

3   deficient before examining the prejudice suffered by the defendant as a result of the alleged

4   deficiencies." *Id*. at 697.

5          Here, the state court reasonably determined, in accordance with the above clearly

6   established Supreme Court precedent, that petitioner could not show prejudice from the

7   shackling or from Vara's prison clothes as required to state cognizable claims of unconstitutional

8   trial court error or ineffective assistance. First, due to the nature of the charged offenses, the jury

9   was necessarily aware of both individuals' status as inmates housed in the security housing unit.

10  Second, the court instructed the jury to disregard the fact that petitioner was shackled during

11  trial: "The fact that physical restraints have been placed on the defendant is not evidence. Do not

12  speculate about the reason. You must completely disregard this circumstance in deciding the

13  issues in the case. Do not consider it for any purpose or discuss it during your deliberations."

14  RT at 592-93. Petitioner's jury was also instructed to disregard the fact that Vara was shackled.

15  CT at 281. It is presumed that the jurors followed these instructions. *See Rhoades v. Henry*, 598

16  F.3d 495, 510 (9th Cir. 2010); *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is

17  presumed to follow its instructions.") (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

18         In light of the mitigating instructions and the fact that the jury was already aware

19  from the trial evidence that both petitioner and Vara were inmates housed in the security unit, the

20  state court's rejection of the underlying shackling claims and the ineffective assistance claims for

21  lack of prejudice was consistent with, and a reasonable application of clearly established

22  Supreme Court precedent. *See Holbrook* , 475 U.S. at 572; *Strickland*, 466 U.S. at 694-95.

23         Petitioner's allegation that his shackling violated the Eighth Amendment's

24  prohibition on cruel and unusual punishment also fails to state a cognizable claim on habeas

25  corpus. The Cruel and Unusual Punishment Clause places three distinct limits on the state's

26  criminal law powers: "First, it limits the kinds of punishment that can be imposed on those

7

convicted of crimes; second, it proscribes punishment grossly disproportionate to the severity of the crime; and third, it imposes substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright*, 430 U.S. 651, 667 (1977).

The trial court's order that petitioner be shackled at his trial for the challenged convictions was a function of his *prior* convictions and resulting imprisonment.  To the extent he challenges the shackling on cruel and unusual punishment grounds, he fails to challenge to the *fact or duration* of his confinement *for the convictions at issue*, as required to state a cognizable claim on federal habeas corpus.  *See Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (holding that a habeas corpus action pertains solely to challenging "the fact or duration" of confinement); *see also Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Nelson v. Campbell*, 541 U.S. 637, 643 (2004) ("[C]onstitutional claims that... challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of the [habeas] core and may be brought pursuant to a [42 U.S.C.] § 1983 [action] in the first instance.").  This particular allegation also fails for lack of applicable clearly established Supreme Court precedent, as the Supreme Court has not addressed a criminal defendant's right to be free from shackling during trial under the Eighth Amendment in the manner asserted by petitioner.  *See*, *e.g.*, *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (holding that under the AEDPA, the Supreme Court must have "squarely" established a specific legal rule in order for it to be binding on the states); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (holding that a state court's decision cannot be contrary to, or an unreasonable application of clearly established federal if there is a "lack of holdings from" the Supreme Court).

Finally, to any extent petitioner claims the trial court's shackling orders were was merely an abuse of discretion under state law, he fails to state a federal claim.  *See* 28 U.S.C. § 2254(a) ("Federal habeas corpus relief is available to a state prisoner only to correct violations of the United State Constitution, federal laws, or treaties of the United States"); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue a writ on the basis of a perceived

1   error of state law.").  For all these reasons, petitioner's ground one should be denied.

2              C.       Ground Two: Destruction of Evidence

3              In ground two, petitioner claims the trial court erred in denying his motion to

4   dismiss based on the alleged destruction of exculpatory evidence consisting of the clothes he was

5   wearing at the time of the stabbing.  He further claims both trial counsel and appellate counsel

6   rendered ineffective assistance in regard to this matter.

7              In the last reasoned state court decision applicable to petitioner's ground two, the

8   Sacramento County Superior Court held:

9              The court's underlying file for Case No. 02F10894 does contain a
               minute order for the trial on October 10, 2007, that indicates that:
10             "The court heard argument from counsel outside the presence of
               the jury re: the defendant's Motion to Dismiss the charges in view
11             of the destruction by the California Department of Corrections and
               Rehabilitation (CDCR) of the defendant's clothing worn at the
12             time of the commission of the above offenses.  The Court found
               negligence exists on the part of the CDCR, but no bad faith intent,
13             and therefore denied the Motion to Dismiss."

14             Petitioner fails to show that this ruling was error (see *Arizona v.
               Youngblood*) (1988) 488 U.S. 51).
15

16   LD 13 at 4.

17             Due process standards require that criminal defendants be afforded a meaningful

18   opportunity to present a complete defense, including "what might loosely be called the area of

19   constitutionally guaranteed access to evidence."  *United States v. Valenzuela-Bernal*, 458 U.S.

20   858, 867 (1982).  In *California v. Trombetta*, the United States Supreme Court held that the

21   government violates a defendant's right to due process if it destroys evidence that possessed

22   "exculpatory value that was apparent before the evidence was destroyed [that is] of such a nature

23   that the defendant would be unable to obtain comparable evidence by other reasonably available

24   means."  *Trombetta*, 467 U.S. 479, 489 (1984).

25             In order to show a constitutional violation, a criminal defendant must demonstrate

26   that the police acted in bad faith in failing to preserve the potentially useful evidence.  *Arizona v.*

1  *Youngblood*, 488 U.S. 51, 58 (1988).  "The presence or absence of bad faith turns on the

2  government's knowledge of the apparent exculpatory value of the evidence at the time it was lost

3  or destroyed."  *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) (citing *Youngblood*,

4  488 U.S. at 56-57).  The fact that evidence was "potentially exculpatory" is not a sufficient

5  showing of prejudice.  *Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997) (*citing Youngblood*,

6  488 U.S. at 57).  "Potentially exculpatory" evidence is evidence "of which no more can be said

7  than that it could have been subjected to tests, the results of which might have exonerated the

8  defendant."  *Youngblood*, 488 U.S. at 57.

9          Here, petitioner's clothing was, at best, potentially exculpatory, in that it could

10  have been subjected to observation or tests to detect the presence of the victim's blood.  The

11  results of the tests were potentially beneficial to the defense, but would not have exonerated

12  petitioner since a lack of blood on his clothes would not conclusively establish that he could not

13  have stabbed the victim.  Under these circumstances, the superior court's ruling that bad faith

14  was not shown on the part of prison officials, law enforcement, or the prosecution was a

15  reasonable determination of the facts and consistent with the applicable clearly established

16  United State Supreme Court precedent.  *See Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (holding

17  that the bad faith requirement applies to potentially exculpatory evidence even when the

18  contested evidence "provides a defendant's only hope for exoneration and is essential to and

19  determinative of the outcome of the case") (internal quotation marks omitted).

20          Petitioner's related ineffective assistance claims also fail.  To state a cognizable

21  claim for ineffective assistance of trial or appellate counsel, petitioner must show that counsel

22  performed deficiently and that actual prejudice resulted.  *Strickland*, 466 U.S. at 668, 688.  There

23  is a strong presumption that defense counsel provided "adequate assistance and made all

24  significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S.

25  at 690.

26  /////

1      The *Strickland* standard applies with equal force to challenges to the effective

2  assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Appellate counsel

3  need not, however, raise every non-frivolous issue requested by the client at the risk of being

4  found ineffective. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). Generally, to succeed on such

5  a claim the petitioner must demonstrate that "a particular non-frivolous claim was clearly

6  stronger than issues that counsel did present." *Smith*, 528 U.S. at 288. The exercise of judgment

7  in framing issues on appeal makes it "difficult to demonstrate that [appellate] counsel was

8  incompetent under *Strickland* for omitting a particular argument." *Id.* at 288.

9      Here, trial counsel moved to dismiss petitioner's case pursuant to *Youngblood* and

10 *Trombetta*, asserting that the destroyed evidence could have exonerated him. RT at 282. Trial

11 counsel argued that no blood on petitioner's clothing was apparent from the photographs she

12 saw. RT at 284. The trial court, however, found no bad faith and no intentional suppression of

13 evidence in the destruction of petitioner's clothing, and further indicated the evidence did not

14 appear to be exculpatory. RT at 289. During closing argument, counsel argued, as to

15 petitioner's clothes:

16         We do know [Mr. Fuentes] was searched. Nothing was found on
           him in the way of contraband or a weapon. [Officer Reeves]
17         confiscated a T-shirt that had apparent blood. We don't see the T-
           shirt in court. All we have are photographs. He can't tell you
18         where on the shirt the blood was. He's got no idea. And he can't
           even recall where he thought it was. You know, front, back, he
19         can't even give the general location. He didn't note any blood
           stains, where they were located..
20

21 RT at 647-48.

22      On this record, petitioner fails to demonstrate deficient performance on the part of

23 trial counsel or appellate counsel. Trial counsel raised the issue, however, her motion to dismiss

24 was properly denied by the trial court for the reasons discussed. It necessarily follows that

25 appellate counsel was not deficient for omitting this weak issue on appeal. *See Jones*, 463 U.S.

26 at 751-52 ("Experienced advocates since time beyond memory have emphasized the importance

11

1  of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or

2  at most on a few key issues.").  No relief is available for petitioner's claims in ground two.

3          D.      Ground Three: Evidentiary Admission

4          In ground three, petitioner claims the trial court erred in allowing the prosecution

5  to introduce certain evidence in light of the fact that other evidence was destroyed, as discussed

6  in ground two.  In particular, petitioner contends the trial court should have excluded the

7  following evidence which was admitted at trial: (1) Officer Edmund Reeves' testimony that he

8  confiscated petitioner's T-shirt following the stabbing due to possible blood stains on the T-shirt,

9  (2) People's Exhibit 32, a photograph of petitioner's T-shirt with unidentified spots on it, and (3)

10  a copy of the videotape of the crime as it occurred.  Petitioner further alleges that trial counsel

11  was ineffective in failing to object to this evidence and that appellate counsel was ineffective for

12  not raising the issue on appeal.

13          In the last reasoned state court decision applicable to this ground, the Sacramento

14  County Superior Court held:

15          [P]etitioner shows no error, as no sanction of any kind was
        warranted due to the destruction of evidence because petitioner did
16          not show bad faith in the destruction (*Youngblood*).  As such, the
        claim is denied.

17

18  LD 13 at 4.

19          A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas

20  corpus relief only if it rendered the state proceedings so fundamentally unfair as to violate due

21  process. *See generally Williams v. Taylor,* 529 U.S. 362, 375 (2000); *see also Drayden v. White*,

22  232 F.3d 704, 710 (9th Cir. 2000).  A "petitioner bears a heavy burden in showing a due process

23  violation based on an evidentiary decision."  *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir.

24  2005).  The Ninth Circuit has further explained:

25          Under AEDPA, even clearly erroneous admissions of evidence that
        render a trial fundamentally unfair may not permit the grant of
26          federal habeas corpus relief if not forbidden by "clearly established

1        Federal law," as laid out by the Supreme Court. 28 U.S.C. §
2        2254(d). In cases where the Supreme Court has not adequately
    addressed a claim, this court cannot use its own precedent to find a
3        state court ruling unreasonable. *Musladin,* 549 U.S. at 77, 127
    S.Ct. 649.

4    *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).

5            Petitioner's ground three fails to state a cognizable federal claim.  Although he

6    claims the evidence was unconstitutionally admitted, his contentions in this regard are

7    conclusory and unsupported by federal law.  No clearly established Supreme Court precedent

8    prohibits a state court from admitting the challenged evidence under the circumstances

9    presented.  In addition, this court is bound by the state court's determination that, under state

10   law, no sanction against the prosecution was warranted at trial since there was no finding of bad

11   faith in the destruction of evidence.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have

12   repeatedly held that a state court's interpretation of state law... binds a federal court sitting in

13   habeas corpus.").  For these same reasons, petitioner fails to show that either trial counsel or

14   appellate counsel rendered ineffective assistance in regard to the matter.  *See Gonzales v.*

15   *Knowles*, 515 F.3d 1006, 1-17 (9th Cir. 2008) ("[C]ounsel cannot be deemed ineffective for

16   failing to raise [a] meritless claim.").  No relief is available for petitioner's ground three.

17           E.      Ground Four: Jury Instruction on Destroyed Evidence

18           Following the trial court's denial of the defense motion to dismiss made pursuant

19   to *Trombetta* (467 U.S. 479) and *Youngblood* (488 U.S. 51), trial counsel requested "a special

20   admonition or instruction at the end of the case as to the fact that evidence has been destroyed, as

21   to what assumption a jury can make."  RT at 290.  The trial court responded, "Why don't you

22   present that pinpoint instruction."  RT at 290.  For his fourth ground, petitioner claims trial

23   counsel was ineffective for not presenting the trial court with a pinpoint instruction and that

24   appellate counsel was ineffective in failing to raise the issue on appeal.

25           In the last reasoned state court opinion applicable to this ground, the Sacramento

26   County Superior Court held:

1    "[P]etitioner was not entitled to any such instruction, because
     petitioner did not then and does not now show bad faith in the
2    destruction of the evidence.  Without bad faith, no sanction,
     including an admonition to the jury, was required (*Youngblood*).
3    [¶] For these reasons, the claim is denied.

4    LD 13 at 5.

5            Under California law, in the absence of bad faith on the part of law enforcement

6    in failing to preserve evidence, a trial court need not instruct the jury regarding inferences that

7    may be drawn in favor of defendants or against the prosecution.  *See People v. Cook*, 40 Cal.4th

8    1334, 1351 (2007).  Once again, this court is bound by the state court's determination of state

9    law on this issue.  *See Richey*, 546 U.S. at 76 (2005).  Accordingly, petitioner's claim of trial

10   court error fails.

11           Petitioner's related claims of ineffective assistance also fail.  The deferential

12   *Strickland* standard, as set forth *supra*, is "doubly" deferential when applied in tandem with the

13   highly deferential standard of section 2254(d).  *Harrington v. Richter*, 131 S.Ct. 770 788 (2011).

14   "When § 2254(d) applies, the question is not whether counsel's actions were reasonable[; t]he

15   question is whether there is any reasonable argument that counsel satisfied *Strickland*'s

16   deferential standard."  *Richter*, 131 S.Ct. at 788.  Here, petitioner was not entitled under state law

17   to a pinpoint instruction regarding the destruction of evidence under California law.  Counsel

18   still highlighted the prosecution's failure to produce petitioner's T-shirt as evidence, when she

19   argued to the jury:

20           Nothing was found on [Mr. Fuentes] in the way of contraband or a
             weapon. [Officer Reeves] confiscated a T-shirt that had apparent
21           blood.  We don't see the T-shirt in court.  All we have are
             photographs.  He can't tell you where on the shirt the blood was.
22           He's got no idea.  And he can't even recall where he thought it
             was.  You know, front, back, he can't even give the general
23           location.  He didn't note any blood stains, where they were
             located.  He mentioned blood, but not stains, where they were on
24           the shirt.  And he took the T-shirt and kept it.

25           This is kind of important because Mr. Fuentes' T-shirt is kept and
             maintained somewhere, but the T-shirt that's found out on the yard
26           is not.

14

He could not find any blood on Mr. Fuentes on the pictures that
were taken of Mr. Fuentes in court, on the T-shirt, on any of the
clothing.

RT at 647-48.  A reasonable argument exists that neither trial nor appellate counsel performed

deficiently in regard to the lack of a defense request for a pinpoint instruction on the destroyed

evidence.  No relief is available for petitioner's ground four.

   F.  Ground Five: Opening Statement

   In ground five, petitioner claims trial counsel rendered ineffective assistance

when she failed to keep promises made to the jury during opening statement, and that appellate

counsel rendered ineffective assistance in failing to raise this issue on appeal. Petitioner alleges

trial counsel promised the evidence would show (1) that the weapon found on the yard was not

consistent with the victim's stab wounds, (2) that another inmate took an ice-pick type of

weapon off the yard that day, and (3) that petitioner engaged in a fist fight with the victim but

did not stab the victim.

   Trial counsel stated to the jury during her opening statement, in relevant part:

In the video tape, there is no weapon that's actually seen going
across the yard over a, over the brick wall, or any place else.
That's because the weapon that's found on other side [*sic*] of the
yard is not even consistent with the stab wounds that were placed
in Mr. Contraras.

The DA's argues [*sic*] Mr. Fuentes threw the knife over there with
some sort of movement he sees on the tape. [¶] You are the ones
who are going to have to judge whether or not that movement took
place.

Also, the doctors will come in and testify... that the wounds were
actually made from more of an ice pick weapon.  That's how they
describe the weapon.

The weapon that you will see in court is approximately five inches
long, has a very thick blade, and simply is not consistent with the
wounds that were on Mr. Contreras.

What the evidence is going to show is that no ice-pick type
weapon was ever found on the yard.  That evidently went off with
another inmate off the yard and was disposed of.

1           [....]

2           You are going to find that the evidence also shows there's wounds
            on the front of Mr. Fuentes hands that are consistent with a fist
3           fight, as opposed to what the officers testified to as to a side
            movement with his hands. [¶] The evidence is consistent that he
4           had a fist fight Mr. Contreras, but it's inconsistent that he is the
            one that did the stabbing in this case [*sic*].

5

6  Aug. RT at 10-11.  Petitioner contends that witness Vara's testimony, in particular, was

7  inconsistent with counsel's opening statement.

8           In the last reasoned state court decision applicable to this ground, the Sacramento

9  County Superior Court held:

10          [T]he claim lacks merit.  Petitioner does not show the substance of
            the communications between Vara and counsel, and thus does not
11          show that counsel knew that Vara would not testify in support of
            the defense theory but nevertheless made the statements in opening
12          statement and presented Vara as a witness.  To the contrary, it is
            inferable that counsel expected Vara to testify in support of the
13          defense theory, after having had communications with Vara, and
            that Vara unexpectedly testified differently.  That does not
14          constitute ineffective assistance of counsel, and again, petitioner
            does not show otherwise.  And, more importantly, according to the
15          Third District opinion, Vara did testify that he and not petitioner
            committed the stabbing. [¶] ...[T]he claim is denied.

16

17  LD 13 at 6.

18          It cannot be ascertained from the record before this court whether counsel had

19  reason to know in advance the substance of Vara's trial testimony.  Consistent with her opening

20  statement, counsel introduced evidence that the treating resident had described the victim's

21  wounds as "ice-pick-type-wounds."  RT at 563-64.  Counsel additionally presented the defense

22  that Vara committed the stabbing and not petitioner.  Even assuming for the sake of argument

23  that counsel, in her opening statement, exaggerated potential weaknesses in the prosecution's

24  case, a reasonable argument exists that she did not perform deficiently by identifying and

25  exaggerating those potential weaknesses and presenting evidence consistent therewith to the

26  extent possible.

                                        16

1      In any event, this court need not determine whether counsel's performance was

2  deficient because petitioner cannot demonstrate the requisite prejudice from counsel's alleged

3  promises during opening statement.  *See Strickland*, 466 U.S. at 697.  Petitioner fails to show a

4  reasonable likelihood of a different result absent the challenged statements.  As set forth,

5  contrary to petitioner's argument, the defense evidence was consistent with the challenged

6  portion of counsel's opening statement.  While counsel did not highlight in her opening

7  statement the fact that Vara would claim responsibility for the stabbing, that testimony was still

8  arguably beneficial to the defense.  The prosecution's evidence against petitioner included the

9  video footage of the stabbing in addition to Officer Green's eyewitness testimony that he saw

10  petitioner clench his fist and twice jab at the victim's chest and that petitioner subsequently had

11  blood on his shirt and hands.  LD 3 at 2-3.  Petitioner does not allege what counsel should have

12  presented in her opening statement which would have better for his defense.  Under these

13  circumstances, he fails to show actual prejudice resulting from trial counsel's opening statement

14  or appellate counsel's omission of this issue on direct appeal.

15          G.      Ground Six: Evidentiary Admission of CD Narrative

16      Over the defense's objection for prejudice, the trial court allowed into evidence

17  People's Exhibit 40, an audio CD containing a narrative recording of alleged unproven

18  statements by prosecution witness Officer Rodriguez, including that petitioner was the assailant

19  who stabbed the victim.  Petitioner contends this evidence was irrelevant and improperly

20  admitted since the same could have been proven by direct testimony from Rodriguez.  For

21  ground six, he claims the trial court's ruling on the issue was an abuse of discretion and that

22  appellate counsel rendered ineffective assistance in failing to raise the issue on appeal.

23      In the last reasoned state court decision applicable to ground six, the Sacramento

24  County Superior Court held:

25          [P]etitioner does not allege that he was prevented from cross-
            examining Rodriguez about his statements made in the audio
26          portion of the DVD.  The court's minute orders show that the

17

prosecution did call Rodriguez as a witness at trial, thereby giving petitioner the opportunity to cross-examine.  Petitioner suffered no prejudice from the introduction of the DVD and fails to show error requiring reversal on this ground.

Further, it appears that the video portion of the DVD showed petitioner committing the stabbing.  That Rodriguez narrated that would not have had any appreciable effect on jurors who had already heard Green testify that he had seen petitioner commit the stabbing, and who could view for themselves as to whether the video showed petitioner, as opposed to some other person, committing the stabbing. [¶] For these reasons, the claim is denied.

LD 13 at 6-7.

Petitioner's contention that the trial court abused its discretion in admitting the evidence fails to state a cognizable federal claim.  *See* 28 U.S.C. § 2254(a); *Pulley*, 465 U.S. at 41.  Moreover, the admission of Rodriguez's narrative statement did not render petitioner's trial fundamentally unfair in violation of due process (*see Williams,* 529 U.S. at 375; *Drayden*, 232 F.3d at 710) since petitioner was not deprived of the opportunity to cross-examine him about the contents of the narrative statement.  "The rights to confront and cross-examine witnesses... have long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).  The constitutional right to cross-examination, implicit in the right of confrontation, helps assure the accuracy of the truth-determining process.  *Id*. at 295.  Here, the defense was afforded  the opportunity to cross-examine Rodrgiuez about the contents of his narrative statement.  RT at 389-397.  Accordingly, the state court's rejection of the trial court error claim is consistent with, and a reasonable application of clearly established Supreme Court precedent on confrontation and cross-examination.

Petitioner's claim that appellate counsel rendered ineffective assistance by omitting the issue on appeal is foreclosed by the Sacramento County Superior Court's aforementioned determination on state habeas corpus that petitioner "fail[ed] to show error requiring reversal on this ground."  LD 13 at 7; *see Richey*, 546 U.S. at 76 ("[A] state court's interpretation of state law... binds a federal court sitting in habeas corpus.").  Since there was

1  neither Constitutional error nor error under state law, petitioner cannot show the requisite

2  prejudice for an ineffective assistance claim.  *See Strickland*, 466 U.S. at 694-95.

3         H.     Ground Eight: Motion to Quash Defense Witnesses

4         Petitioner claims the trial court abused its discretion when it granted the

5  prosecution's motion to quash various defense witnesses who would have testified about the

6  "Security Housing Unit (SHU) Syndrome."  Petitioner also claims appellate counsel was

7  ineffective in failing to raise the issue on appeal.

8         Again, petitioner's "abuse of discretion" contention about the trial court's ruling

9  fails to state a federal question.  *See* 28 U.S.C. § 2254(a); *Pulley*, 465 U.S. at 41.  Moreover,

10 while petitioner has named in his federal petition the witnesses whom he believes should have

11 been allowed to testify, he still fails to provide affidavits from the identified potential witnesses.

12 *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (denying ineffective assistance claim

13 premised on counsel's failure to call alibi witness where the petitioner failed to present an

14 affidavit from the alleged alibi witness).  Petitioner fails to establish that the witnesses were

15 available and willing to testify and further fails show prejudice for his ineffective assistance

16 claim by stating with specificity the substance of each witness's potential testimony and showing

17 how that testimony would have altered the outcome of the trial.  *See United States v. Berry*, 814

18 F.2d 1406, 1409 (1987).  For these same reasons, petitioner fails to show the trial court's

19 evidentiary ruling rendered his trial fundamentally unfair in violation of due process.  *See*

20 *Williams,* 529 U.S. at 375.  Petitioner's claims relating to the prosecution's successful motion to

21 quash are without merit.

22        I.     Ground Nine:  Cross-Examination of Witness Vara

23        In ground nine, petitioner claims the trial court abused its discretion in allowing

24 the prosecution to pursue a line of questioning of witness Vara regarding the use of "kites" by

25 him and by prison gang members, and that both trial and appellate counsel rendered ineffective

26 assistance in regard to the issue.  Petitioner argues that questions about prison gangs were

1   inflammatory, irrelevant to the actual issues before the jury, and likely to improperly influence

2   the jury.

3             In the last reasoned state court decision applicable to this ground for relief, the

4   Sacramento County Superior Court rejected the claims for lack of prejudice:

5             Nor does it appear that petitioner shows prejudice, in any event.
          As noted above, Officer Green saw petitioner commit the stabbing,
6             and that was depicted in the video.  Vara testified that he, and not
          petitioner, stabbed the victim; it was a choice for the jurors
7             whether to believe Officer Green and what they viewed with their
          own eyes in the video or to believe Vara.  The jurors already knew
8             that both Vara and petitioner were in the security housing yards.
          Any testimony about "kites" and gangs simply could not have been
9             prejudicial.

10  LD 13 at 7-8.

11            Petitioner argues that the challenged line of questioning encouraged the jury to

12  infer a criminal disposition, presumably of him, however this attempt to show prejudice is

13  unconvincing since the jurors were fully aware from the trial evidence that the events at issue

14  took place in a prison setting and that petitioner was housed in the security unit.  Accordingly,

15  the state court reasonably held, consistent with clearly established Supreme Court precedent, that

16  the prosecutor's questioning of witness Vara about prison gangs and "kites" was not so

17  prejudicial that it rendered petitioner's trial so fundamentally unfair as to violate due process.

18  *See Williams,* 529 U.S. at 375.  For the same reasons, no actual prejudice could have resulted

19  from the trial counsel's failure to object to the questions or appellate counsel's omission of the

20  issue on appeal.  *See Strickland*, 466 U.S. at 697.  No relief is available.

21            J.        Ground Ten: Counsel for Witness Vara during Sanity Phase

22            Petitioner claims the trial court abused its discretion in failing to provide defense

23  witness Vara with counsel during the sanity phase of petitioner's trial, and that both trial and

24  appellate counsel rendered ineffective assistance of counsel in regard to this issue.  Petitioner

25  asserts that Vara, who was not offered immunity from prosecution, was clearly in need of

26  representation.

1        In the last reasoned state court decision applicable to ground ten, the Sacramento

2   County Superior Court held:

3           [T]he claim lacks merit, as petitioner's own rights were not
            violated by Vara's lack of counsel during Vara's testimony at the
4           sanity phase.  Vara was provided with counsel during the guilt
            phase to protect Vara's personal Fifth Amendment privilege
5           against self-incrimination.  Petitioner cannot now vicariously
            assert a third party's privilege against self-incrimination; rather,
6           petitioner can make a challenge only upon shownig that Vara's
            testimony was involuntarily coerced by the prosecution or police
7           (see People v. Douglas (1990) 50 Cal.3d 468).  As petitioner does
            not show involuntariness, the claim fails in any event.
8
            Nor does petitioner show prejudice.  He does not state what
9           testimony Vara gave at the sanity phase that was reasonably likely
            to have made a difference in the outcome of the trial that counsel,
10          had it been provided for Vara, would have advised Vara not to
            give, nor does he show documentation of that testimony. [¶] For
11          these reasons, the claim is denied.

12   LD 13 at 8.

13       Habeas corpus relief is available for a state prisoner under section 2254 "only on

14   the ground that he is in custody in violation of the Constitution or laws or treaties of the United

15   States."  28 U.S.C. § 2254.  A criminal defendant does not have standing to raise a constitutional

16   violation suffered by a third party.  *United States v. Mattison*, 437 F.2d 84, 85 (9th Cir. 1970)

17   (citing *Alderson v. United States*, 394 U.S. 165, 171-76 (1969); *see also Broadrick v. Oklahoma*,

18   413 U.S. 601, 610 (1973) ("constitutional rights are personal and may not be asserted

19   vicariously.").  Accordingly, petitioner's allegations about Vara's lack of representation during

20   the sanity phase of petitioner's trial fail to state a cognizable claim for which habeas corpus relief

21   can be granted.

22           K.      Ground Eleven: Prosecutorial Misconduct

23       Petitioner claims the prosecutor committed prejudicial misconduct during closing

24   argument, and that both trial and appellate counsel rendered ineffective assistance in regard to

25   the alleged error.

26   /////

1    In the last reasoned state court decision applicable to this ground, the Sacramento

2  County Superior Court rejected the claims for petitioner's "lack of specificity and lack of

3  showing prejudice."  LD 13 at 9.

4    The appropriate standard for a federal court reviewing a claim of prosecutorial

5  misconduct on habeas corpus is the narrow one of whether the conduct violated due process.  *See*

6  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  "The relevant question is whether the

7  prosecutor's error 'so infected the trial with unfairness as to make the resulting conviction a

8  denial of due process.'"  *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S.

9  637, 643 (1974)); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1983) ("the touchstone of due

10  process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the

11  culpability of the prosecutor").  A challenge to a portion of a closing argument is "examined

12  within the context of the trial to determine whether the prosecutor's behavior amounted to

13  prejudicial error."  *United States v. Young*, 470 U.S. 1, 12 (1985).

14    Petitioner makes several broad and general claims of improper argument by the

15  prosecutor, providing corresponding page numbers in the record for some but not others.

16  Review of the prosecutor's argument reveals no misconduct approaching the level of a due

17  process violation.  Petitioner further fails to show deficient performance by trial or appellate

18  counsel, or that prejudice resulted.  *See Strickland*, 466 U.S. at 694-95.  No relief is available for

19  petitioner's claims premised on prosecutorial misconduct during closing arguments.

20    L.    Ground Twelve: Counsel's Performance at the Sanity Phase

21    Petitioner claims trial counsel rendered ineffective assistance at the sanity phase

22  of his trial.  In particular, petitioner claims trial counsel failed to offer into evidence various

23  documents including portions of his medical records and rules violation reports he received for

24  mutual combat after the prosecutor asserted in closing argument that the defense had failed to

25  corroborate portions of petitioner's trial testimony with other evidence.

26  /////

1          In the last reasoned state court decision applicable to this claim, the Sacramento

2  County Superior Court held, in relevant part:

3          [Petitioner fails to] show that hearsay statements contained in these
            documents would have been ruled admissible under the hearsay

4          rules.  Nor does he show that even if admissible, these would have
            been reasonably likely to have made a difference in the outcome of

5          the trial.  For these reasons, the claim is denied.

6  LD 13 at 9.

7          Petitioner states the evidence at issue was relevant and necessary, however, he

8  does not explain how it was relevant or state the basis on which it would have been admissible.

9  His allegations in this regard are vague, conclusory, and unsupported by necessary factual

10  allegations.  No relief is available.  *See Jones v. Gomez*, 66 F.3d 199, 204-05 & n.1 (9th Cir.

11  1994) ("It is well-settled that "[c]onclusory allegations which are not supported by a statement of

12  specific facts do not warrant habeas relief.") (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir.

13  1994)).

14          M.     Ground Thirteen: Ineffective Assistance and CALCRIM No. 3450

15          Petitioner claims trial counsel rendered ineffective assistance in failing to object

16  to the trial court's instruction with CALCRIM No. 3450 during the sanity phase of the trial.  The

17  challenged portion of CALCRIM No. 3450 instructed the jury:

18          If you find the defendant was legally insane at the time of his
            crime, he will not be released from custody until a court finds he

19          qualifies for release under California law.  Until that time he will
            remain in a mental hospital or outpatient treatment program, if

20          appropriate.  He may not, generally, be kept in a mental hospital or
            outpatient program longer than the maximum sentence available

21          for his crime. [....] You must not let any consideration about where
            the defendant may be confined, or for how long, affect your

22          decision in any way.

23  CT at 332.  Petitioner contends the instruction was inaccurate and misleading to the jurors to the

24  /////

25  /////

26  /////

extent it indicated he might be confined in a mental hospital.  As set forth elsewhere, petitioner was already serving an unrelated life sentence in state prison.

In the last reasoned state court decision applicable to this ground, the California Court of Appeal, Third District, held that the challenged portion of the instruction "was legally correct and could not have prejudiced defendant," and therefore "trial counsel's failure to object was not ineffective assistance."  Respondent's Exhibit A at 6.  The court reasoned:

> The paragraph states unequivocally: "If you find the defendant was legally insane at the time of his crime, he will not be released from custody until a court finds he qualifies for release under California law."  The reference to an outpatient treatment program is qualified by the words "if appropriate."  This language protects the defendant and alleviates any possible juror concern about his possible release into the community on a finding of insanity.  (*Kelly, supra*, 1 Cal.4th at p. 538.)  And the paragraph ends by admonishing the jury not to concern itself with "where the defendant may be confined, or for how long[.]"  Absent contrary evidence (which defendant does not cite), we presume the jurors followed the court's instructions.  (*People v. Davenport* (1995) 11 Cal.4th 1171, 1210.)

> We also reject defendant's claim that the instruction was required to inform the jury in exhaustive detail of all the steps required by statute before a person confined in prison may be released to an outpatient treatment.  The statutory outpatient procedures and requirements are not relevant to the jury's task of determining the defendant's sanity at the time of the offense. (See *People v. Hart* (1999) 20 Cal.4th 546, 656.)  And, as we have already noted, the instruction as a whole clearly and correctly tells the jury not to consider such matters.

> Because this paragraph of instruction as given was not erroneous, trial counsel had no meritorious ground on which to object to it.  Therefore, his failure to object did not constitute ineffective assistance.

Respondent's Ex. A at 7.

Petitioner's ineffective assistance claim fails.  Since the challenged portion of the instruction was held to be not erroneous by the state court, counsel cannot be found incompetent for failing to object.  *See Richey*, 546 U.S. at 76 ("a state court's interpretation of state law... binds a federal court sitting in habeas corpus."); *see also James v. Borg*, 24 F.3d 20, 27 (9th Cir.

24

1   1994) (finding no ineffective assistance where the motion that allegedly should have been made

2   would have been futile).

3            N.     Ground Fourteen: Sanity Presumption in CALCRIM No. 3450

4          Petitioner further claims the trial court's instruction of the jury with CALCRIM

5   No. 3450 violated his right to due process and the Fifth and Sixth Amendments.  The portion of

6   CALCRIM No. 3450 at issue, given over the defense's objection, instructed the jury: "If you

7   conclude that at times the defendant was legally sane and at other times the defendant was

8   legally insane, you must assume that he was legally sane when he committed the crime."  CT at

9   332.  Petitioner contends this sentence created an impermissible mandatory presumption of

10   sanity which relieved the state from proving every fact necessary to prove his guilt and

11   precluded the jury from considering his insanity defense.

12         In the last reasoned state court decision applicable to this ground, the California

13   Court of Appeal noted that the current version of CALCRIM No. 3450 no longer contains the

14   challenged sentence since the Judicial Council of California revised the paragraph in 2008 to

15   read instead: You may find that at times the defendant was legally sane and at other times was

16   legally insane.  You must determine whether (he/she) was legally insane when (he/she)

17   committed the crime."  Respondent's Ex. A at 6.  Nevertheless, the state court went on to reject

18   petitioner's claim for lack of prejudice:

> 19   [I]f we conclude that the giving of the former paragraph in this
> case was harmless beyond a reasonable doubt, we need not decide
> 20   whether *People v. Thomas* (2007) 156 Cal.App.4th 304 correctly
> held that, although the paragraph "could be misleading" when
> 21   "viewed in isolation," it is not when viewed in context with the
> other language of the instruction; reasonable jurors would have
> 22   understood that an "assumption of sanity, like an assumption of
> innocence, is just another way of saying the burden is on the party
> 23   claiming otherwise to prove it."  (*Id*. at pp. 310-311.)

> 24   Defendant asserts that he was harmed by the instruction since he
> presented substantial evidence that (a) he became legally insane
> 25   due to his 10 years in the Pelican Bay SHU; (b) the symptoms of
> his legal insanity returned shortly before he committed the crime,
> 26   when he learned that he would be sent back to Pelican Bay; and (c)

in between those times, when he was back at CSP-Sacramento on the main line, functioning well, he was legally sane.  Therefore, defendant says, the paragraph at issue precluded jurors from considering the evidence in classes (a) and (b) because of the evidence in class (c).

The contention fails because there was no substantial evidence, from any source, indicating defendant was *legally* insane at any time.

The trial court correctly instructed the jurors that defendant was legally insane if: "1. When he committed the crime, he had a mental disease or defect; [¶] AND [¶] 2.  Because of that disease or defect, he did not know or understand the nature and quality of his act or did not know or understand that his act was morally or legal wrong."

But there was no expert testimony that defendant was legally insane at any time.  To the contrary, both experts who testified at trial, Dr. Chamberlain and Dr. Edwards, opined that defendant was legally sane at the time of the crime and when they interviewed him for the mental health evaluation.  Both testified that he denied any history of psychiatric treatment or medication, and denied having any hallucinations, delusion, current or past depression, or suicidal or homicidal ideation.

Defendant did testify at trial that, due to his incarceration in the SHU, he felt like a dead man and suffered memory loss.  However, memory problems do not equate with legal insanity.  Nothing in his testimony suggested that, when he stabbed the victim, defendant had a mental disease or defect.  And nothing in defendant's testimony indicated that, when he committed the crime, he did not know or understand the nature or quality of the act or did not know or understand that it was morally or legally wrong.  That he purportedly could not remember what happened afterward is not substantial evidence that he was legally insane at the time of the crime.

Likewise, inmate Raymond Vara's testimony was not substantial evidence to support a finding of legal insanity.  According to Vara, defendant had memory problems; would sometimes get angry and violent, then break down and cry; sometimes talked to himself; grew more angry when he became convinced he would be sent back to the Pelican Bay SHU; and was very quiet and calm before stabbing the victim, but afterward looked angry, talked to himself, and paced back and forth in the cell.  However, this evidence does not reasonably tend to show that defendant did not know or understand the nature or quality of the act or did not know or understand that it was morally or legally wrong.

/////

1
2
3

> Consequently, assuming for the sake of discussion that the challenged paragraph of CALCRIM No. 3450 was erroneous, instructing the jury with it was harmless beyond a reasonable doubt.

Respondent's Ex. A at 5-6.

4       Whether rooted directly in the Due Process Clause of the Fourteenth Amendment,

5   or in the Compulsory Process or Confrontation Clause of the Sixth Amendment, the Constitution

6   guarantees criminal defendants a meaningful opportunity to present a defense and to present

7   relevant evidence in their own defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting

8   *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Chambers v. Mississippi*, 410 U.S. 284, 294

9   (1973). Here, however, petitioner's claim that he was prevented from presenting evidence in his

10  defense fails on the factual basis asserted as he states that the defense presented "substantial

11  evidence that at the time the crime was committed he was legally insane." Pet. at 57.

12      As to his claim of an improper mandatory presumption, the Due Process Clause

13  protects the accused against conviction except upon proof beyond a reasonable doubt. *In re*

14  *Winship*, 397 U.S. 358, 364 (1970). Federal due process is violated by jury instructions which

15  use mandatory or permissive presumptions to relieve the prosecution's burden of proof on any

16  element of the crime charged. *Francis v. Franklin*, 471 U.S. 307, 314 (1985); *see also*

17  *Sandstrom v. Montana*, 442 U.S. 510 (1979). There is, however, no clearly established United

18  States Supreme Court precedent recognizing a federal constitutional right to present a sanity

19  defense. *See Medina v. California*, 505 U.S. 437, 449 (1992) ("we have not said that the

20  Constitution requires the States to recognize the insanity defense"). Thus, as explained by the

21  Sixth Circuit,

22
23
24
25

> Challenges to evidence pertaining to an element of an offense raise constitutional due process concerns under *In re Winship* and are thus reviewable on habeas review. On the other hand, challenges to evidence on non-elements do not generally implicate *In re Winship*, and are not reviewable through a § 2254 petition. *See Engle*, 456 U.S. at 119-22, 102 S.Ct. 1558 (refusing to review an argument pertaining to an affirmative defense).

26  *Gall v. Parker*, 231 F.3d 265, 307 (6th Cir. 2000) (claim of insufficient evidence to establish

1   sanity was not cognizable under § 2254 because sanity was not an element of the charged crime),

2   *overruled on other grounds by Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003).

3   Because sanity is not an element of petitioner's offense of conviction, his

4   challenge to the alleged presumption in CALCRIM No. 3450 fails to state a cognizable due

5   process claim on federal habeas corpus.  *See Id.*; *see also Battie v. Estelle*, 655 F.2d 692, 702

6   n.23 (5th Cir. 1981) (denying habeas relief for challenge to sufficiency of the evidence of sanity

7   because there is no federal constitutional right to present the defense of insanity).  Moreover, for

8   the reasons set forth by the state court in finding no prejudice, the challenged instruction did not

9   so infect petitioner's trial with unfairness that his resulting conviction violated due process.

10  *McGuire*, 502 U.S. at 67-68.  Finally, as repeatedly stated herein, no relief is available to any

11  extent the instruction merely violated state law.  *McGuire*, 502 U.S. at 67-68.  For all these

12  reasons, petitioner's ground fourteen is without merit.

13  O.      Grounds Fifteen and Sixteen: Cumulative Error

14  In ground fifteen, petitioner claims that cumulative errors by the trial court

15  violated due process.  Similarly, in ground sixteen, he claims cumulative errors by trial counsel

16  and appellate counsel denied him the effective assistance of counsel and due process of law.

17  In some cases, the combined effect of multiple trial errors may give rise to a due

18  process violation if the trial was rendered fundamentally unfair, even where each error

19  considered individually would not require reversal.  *Parle v. Runnels*, 505 F.3d 922, 927 (9th.

20  Cir. 2007) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Chambers v.*

21  *Mississippi*, 410 U.S. 284, 290 (1973)).  The fundamental question in determining whether the

22  combined effect of trial errors violated a defendant's due process rights is whether the errors

23  rendered the criminal defense 'far less persuasive,' *Chambers*, 410 U.S. at 294, thereby having a

24  'substantial and injurious effect or influence' on the jury's verdict.  *Parle*, 505 F.3d at 927

25  (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993)).

26  /////

1   "[C]umulative-error analysis should evaluate only the effect of matters

2   determined to be error, not the cumulative effect of non-errors."  *United States v. Rivera*, 900

3   F.2d 1462, 1471 (9th Cir. 1990).  Here, no errors were found to substantiate a claim of

4   cumulative error.

5                                    CONCLUSION

6          For all the foregoing reasons, petitioner's application for writ of habeas corpus

7   should be denied.  Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United

8   States District Courts, "[t]he district court must issue or deny a certificate of appealability when

9   it enters a final order adverse to the applicant."  Rule 11, 28 U.S.C. foll. § 2254.  A certificate of

10  appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial

11  showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either

12  issue a certificate of appealability or must state the reasons why such a certificate should not

13  issue.  Fed. R. App. P. 22(b).  For the reasons set forth herein, petitioner has not made a

14  substantial showing of the denial of a constitutional right.

15         Accordingly, IT IS HEREBY RECOMMENDED that

16             1.  Petitioner's application for a writ of habeas corpus be denied; and

17             2.  The district court decline to issue a certificate of appealability.

18         These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

20  days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

23  objections shall be filed and served within fourteen days after service of the objections.  The

24  /////

25  /////

26  /////

parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 4, 2012.

UNITED STATES MAGISTRATE JUDGE

LS/fuen2873.hc